IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    **Plaintiff,**<br><br>v.<br><br>FOX NEWS NETWORK, LLC<br><br>    **Defendant.** | CIVIL ACTION NO.<br><br>COMPLAINT<br><br><u>JURY TRIAL DEMAND</u> |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), Title I of the Civil Rights Act of 1991, the Equal Pay Act of 1963 ("EPA"), and the Age Discrimination in Employment Act of 1967 ("ADEA"), to correct unlawful employment practices based on retaliation and to provide appropriate relief to Catherine Herridge who was adversely affected by such practices. Plaintiff, the United States Equal Employment Opportunity Commission ("Commission"), alleges that Defendant, Fox News Network, LLC ("Defendant"), retaliated against Catherine Herridge ("Herridge") because she engaged in protected activity.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to the following statutes: (a) Section 706(f)(1) and (3) of Title VII and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; (b) Sections 16(c) and 17 of the FLSA which enforces the requirement of the EPA; and (c) Section 7(b) of the ADEA.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Columbia.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, the EPA, and the ADEA, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3); Sections 16(c) and 17 of the FLSA, 29 U.S.C. §§ 216(c), as amended by Section 1 of reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532(1984), 98 Stat. 2705; and by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of the Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and Public Law 98-532 (1984), 98 Stat. 2705.

4. At all relevant times, Defendant has continuously been doing business in Washington, District of Columbia, and has continuously had at least 20 employees.

5. At all relevant times, Defendant has acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h); and has continuously employed employees engaged in commerce or in the production of goods for commerce within the meaning of Section 3(d), (i) and (j) of the FLSA, 29 U.S.C. §203(d), (i) and (j), and Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b),(g) and (h).

## CONCILIATION

7. Prior to the institution of this lawsuit, the Commission's representatives attempted to eliminate the unlawful employment practices alleged below and to effect voluntary compliance with Title VII, the EPA, and the ADEA through informal methods of conciliation, conference and persuasion.

## STATEMENT OF CLAIMS

8. More than thirty days prior to the institution of this lawsuit, Catherine Herridge filed a charge of discrimination with the Commission alleging violations of Title VII, the EPA and the ADEA by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

9. From around May 2008 until around June 2009 Defendant engaged in an unlawful employment practice at its Washington, D.C. facility in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a); Section 15(a)(3) of the FLSA, 29 U.S.C. §215(a)(3); and Section 4(d) of the ADEA, 29 U.S.C. § 623(d) when it retaliated against Herridge by placing retaliatory language in Herridge's employment contract and refusing to remove it over Herridge's objections during contract negotiations.

10. More specifically, beginning in or around November 2006 and continuing through March 2008, Herridge made numerous complaints to Defendant about its employment practices that she believed were discriminatory. Specifically, in November 2006 Herridge complained to Defendant's Bureau Chief that female and black correspondents were given less desirable shifts. In or around January 2007, Herridge complained to Defendant's CEO that Defendant's agreement with her that she receive a "trial run" as an Anchor was not being honored because of her sex, female and age, then 42. In or around December 2007, Herridge complained to Defendant's Bureau Manager that after she was given a trial run as Anchor she was reassigned

3

from Anchor to Reporter and other assignments were being taken away from her because of her age, then 43, sex/female, and because of her prior opposition to discrimination. In December 2007, Herridge also made this complaint to Defendant's Senior Vice-President for Legal and Business Affairs.

11.  From around December 2007 until around March 2008, Defendant's Senior Vice President conducted an internal investigation of the allegations of discrimination made by Herridge. On or about February 7, 2008, in an email to the Vice President, Herridge questioned whether the investigation was thorough or impartial. The next day, Defendant's CEO sent out a company-wide email criticizing employees who complain and which appeared to be in response to Herridge's complaints of age and sex discrimination. After the investigation was completed on March 17, 2008, and Herridge was notified by Defendant's Vice President that no evidence of discrimination had been found, Herridge disputed the findings and expressed her concern to Defendant's Vice President that the outcome of the investigation was predetermined.

12.  Sometime between May 2008 and August 2008, Herridge received a draft of her employment contract which was up for renewal. The contract was very similar to Herridge's previous contracts except that it contained a direct reference to Herridge's internal complaints of discrimination. Specifically, the contract contained language that Herridge will never serve as an Anchor/Co-Anchor or an occasional Anchor/Co-Anchor during the contract term unless Defendant at its sole discretion decides otherwise. Further, the proposed contract stated that both Herridge and Defendant acknowledged that Herridge "has raised allegations of discrimination in the past concerning her non-assignment to anchor positions and concerning other matters, and that Fox has investigated" Herridge's allegations and that Herridge and "Fox also acknowledge that Fox has determined that discrimination did not occur and that [Herridge] did not agree with Fox's determination."

13. This retaliatory language constituted an adverse action against Herridge because it was placed in Herridge's employment contract because of her previous complaints of discrimination, was intended by Defendant to dissuade Herridge from making further complaints of employment discrimination and would have dissuaded a reasonable person from making further complaints of employment discrimination. Herridge viewed the language as retaliatory and as an attempt to intimidate her from filing any further complaints of discrimination. Herridge shared this view with Defendant, however Defendant insisted that the contract include the retaliatory language regarding Herridge's claims of discrimination. Herridge refused to enter into an employment contract that included the retaliatory language. Contract negotiations stalled around November 2008 when Defendant stopped responding to inquiries made by or on behalf of Herridge concerning the status of the negotiations.

14. Herridge filed a charge of discrimination with the Commission in the fall of 2008. In late April 2009 the Commission conducted an on-site investigation. Thereafter around May 8, 2009, Defendant removed the disputed language from Herridge's contract. On or about June 18, 2009, Herridge signed a new employment contract that did not contain any reference to her prior allegations of employment discrimination and set her salary at the level originally proposed by Defendant.

15. Herridge worked without the benefit of an employment contract for approximately nine months, during which time she was constantly in fear of being discharged, losing her livelihood and losing her medical insurance benefits, among other things.

16. The effect of the practices complained of above has been to deprive Herridge of equal employment opportunities and otherwise adversely affect her employments status.

17. The unlawful employment practices complained of above were intentional.

18.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Herridge.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against an any employee because the employee has opposed any practice made unlawful under Title VII, the EPA and the ADEA, or has made a charge, filed a complaint or has caused to be instituted any proceeding, assisted or participated in any manner in an investigation, proceeding or litigation under these statutes.

B.      Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for employees who oppose, or have opposed unlawful employment practices or otherwise engage in protected activity under Title VII, and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant to make Herridge whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

D.      Order Defendant to make Herridge whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, frustration, loss of enjoyment of life, humiliation, inconvenience, and loss of civil rights, in amounts to be determined at trial.

E.      Order Defendant to pay Herridge punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

F.      Grant such further relief as the Court deems necessary and proper in the public interest.

G.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated this 30 day of September, 2010.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

_____
TRACY HUDSON SPICER
Supervisory Trial Attorney
Washington Field Office
131 M Street, N.E.
Washington, D.C.  20507

LYNETTE A. BARNES
Regional Attorney
Charlotte District Office
129 W. Trade Street, Suite 400
Charlotte, N.C.  28202

ATTORNEYS FOR PLAINTIFF