## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EQUAL EMPLOYMENT OPPORTUNITY    )
COMMISSION,    )
    )
    Plaintiff,    )
    )    **Civil Case No. 10-1660 (RJL)**
    v.    )
    )
FOX NEWS NETWORK, LLC    )
    )
    Defendant.    )

## MEMORANDUM OPINION
(August 25, 2011) [#4]

Plaintiff Equal Employment Opportunity Commission ("EEOC" or "plaintiff")

brings this action on behalf of Catherine Herridge ("Herridge") against Fox News

Network, LLC ("Fox News" or "defendant"), alleging violations of Title VII of the Civil

Rights Act of 1964 ("Title VII"); Title I of the Civil Rights Act of 1991 ("Title I"), the

Equal Pay Act of 1963 ("the EPA"), and the Age Discrimination in Employment Act of

1967 ("ADEA").  Plaintiff, who alleges unlawful employment practices including

retaliation for protected activity, seeks – among other things – pecuniary damages,

punitive damages, and injunctive relief for Herridge.  Before this Court is defendant's

Motion to Dismiss For Failure to State a Claim Or, Alternatively, For Summary

Judgment ("Def.'s Mot. To Dismiss or for Summ. J."), Nov. 4, 2010 [Dkt. #4].  Upon

consideration of the parties' pleadings, relevant law, and the entire record herein,

defendant's Motion for Summary Judgment is GRANTED.

1

## BACKGROUND

### I.     Allegations of Discrimination

Catherine Herridge has been employed by Fox News as an on-air news reporter since October 1996, and has been an on-air reporter with the Washington Bureau since 2001. Declaration of Catherine Herridge ("Herridge Decl."), Nov. 19, 2010, ¶ 1 [Dkt. #7-1]. Around July 2006, Herridge became concerned that Fox News would not honor its agreement to give Herridge a "trial run" as anchor. *Id.* ¶ 2; Compl. ¶ 10. According to her Declaration, Herridge was "suspicious that [the agreement] was not being honored because of [her] sex, female[,] and age, then 42." Herridge Decl. ¶ 2. Notwithstanding these purported concerns, Fox News allowed Herridge a trial run as a weekend anchor from approximately fall 2006 to fall 2007. *Id.* ¶ 5. At the end of her trial run, Herridge was reassigned to her position as reporter. *Id.* The weekend anchor position was later filled by a man. *Id.*

Around the time of her trial run as anchor, Herridge began lodging various complaints with Fox News about its employment practices – some about her own treatment and others about the alleged treatment of her peers.[1]  *See* Herridge Decl. ¶ 3. For example, around November 2006, Herridge "questioned" the then-D.C. Bureau Chief about why less desirable shifts were routinely given to female and black correspondents. *Id.*; Compl. ¶ 10. Then, in January 2007, Herridge met with the CEO of Fox News and

---

[1]     Herridge worked under a three-year contract with Fox News. At the time she began complaining of discrimination, she was in the third year of her contract. Brandi Aff. Ex. B, ¶ 2.

expressed concern about the "unfair treatment of women in the Washington, D.C. Bureau."[2] Herridge Decl. ¶ 4. Around December 2007, after her trial as anchor ended, Herridge complained to the D.C. Bureau Chief that she had been demoted and that work assignments were being taken away from her because of her age (then 43) and sex, and because she had previously registered internal complaints about discrimination. *Id.* ¶ 6; Compl. ¶ 10.

That same month, Herridge made similar complaints to Fox News' Senior Vice President for Legal and Business Affairs, Dianne Brandi ("Brandi"), alleging that her reassignment to reporter was the result of age and sex discrimination. Herridge Decl. ¶ 6; Compl. ¶ 10. Brandi initiated an internal investigation around December 2007, Herridge Decl. ¶ 7; Compl. ¶ 11, and Herridge contacted Brandi about the status of the investigation at various points throughout. Herridge Decl. ¶ 8; Compl. ¶ 11 (detailing January 2008 communication and February 2008 e-mail).[3] The investigation lasted

---

[2]     In addition, Herridge complained to Fox News' CEO that her "trial run" was not being honored because of her sex and age. Compl. ¶ 10. *See also* Herridge Decl. ¶ 2 (detailing a similar concern expressed to the network in July 2006).

[3]     Plaintiff notes that the CEO of Fox News sent a company-wide e-mail one day after Herridge e-mailed Brandi in February 2008. *See* Pl.'s Opp'n at 2-3. Because the e-mail contrasted "those days [the early days of Fox]" with the "selfish complaining, petty whining, and a desire to have what someone else has" of "today," *id.*, Herridge alleges that the e-mail was retaliatory – even though she was never mentioned in the e-mail. The parties dispute whether this e-mail is or should be part of the record before this Court. Defendant contends that the e-mail is "irrelevant" since Herridge did not claim that it was materially adverse when she complained to the EEOC, and because the EEOC never advised Fox News that the e-mail was part of the evidence examined during its investigation (and thus did not provide Fox News with an opportunity to respond to it). Def.'s Reply at 1. Plaintiff, in contrast, maintains that it is not required to "cast a blind eye" to evidence uncovered during the course of an investigation. Pl.'s Opp'n at 2 n.1.

approximately three months, until March 2008, at which point Brandi announced her

finding that there was no evidence of discrimination at Fox News.  Herridge Decl. ¶ 9.

She also provided Herridge with a draft of her investigation report.  *Id.*  Herridge

responded by disputing the findings and renewing her complaint of discrimination.  *Id.*;

Compl. ¶ 11.

## II.    Contract Negotiations

Herridge's three-year contract was set to expire in October 2008.  Herridge Decl.

¶ 10; *see also* Brandi Aff. Ex. B, ¶ 2 (three-year employment contract between Fox News

and Herridge from October 2005 to October 2008) [Dkt. #4-3].[4]  Since her contract was

up for renewal, Fox News sent Herridge a draft three-year employment contract in

August 2008.  Herridge Decl. ¶ 10; Compl. ¶ 12.  In the draft, Fox News proposed a deal

in which Herridge would receive $495,000 in year one; $530,000 in year two; and

$570,000 in year three.  Brandi Aff. Ex. C, at ¶ 3.  The proposal offered a raise from year

three of the 2005-2008 contract to year one in the 2008-2011 contract, and a raise in each

of the three years of the new contract.  *See id.*

Although the proposed contract language was similar to that contained in

Herridge's 2005-2008 contract, Herridge Decl. ¶ 10; Compl. ¶ 12, it included two notable

changes.  First, the proposed contract stated that "[p]erformer agrees that she will not

---

As explained more fully *infra*, Section II.B, this discrepancy is not material to the outcome of this case because plaintiff does not prove the injury required to prevail on a charge of retaliation.  As a result, this Court need not – and thus will not – characterize or make factual findings about the CEO's e-mail, beyond mentioning its existence.

[4]    Under the terms of the 2005-2008 contract, Herridge was paid $400,000 in year one; $430,000 in year two; and $460,000 in year three.  Brandi Aff. Ex. B, ¶ 3.

serve as an anchor/co-anchor, or an occasional anchor/co-anchor during the Term hereof, *unless Fox, in its sole discretion*, decides otherwise." Brandi Aff. Ex. C, at 1; Herridge Decl. ¶ 10; Compl. ¶ 12 (emphasis added). In contrast, the 2005-2008 contract stated that "[p]erformer may become a permanent, regular anchor during the Term, *at Fox's sole discretion*." Brandi Aff. Ex. B, at 1 n.1 (emphasis added). Second, Fox memorialized the interactions between Herridge and the network with respect to Herridge's complaints of discrimination:

> Both Performer and Fox acknowledge that Performer has raised allegations of discrimination in the past concerning her non-assignment to anchor positions and concerning other matters, and that Fox has investigated Performer's allegations. Performer and Fox also acknowledge that Fox has determined that discrimination did not occur and that Performer does not agree with Fox's determination.

Brandi Aff. Ex. C, at 1; Herridge Decl. ¶ 10; Compl. ¶ 12. Through her agent, Herridge rejected the proposal on August 15, 2008. Herridge Decl. ¶ 11; Compl. ¶ 13. She countered with an offer of $621,000 in year one; $714,150 in year two; and $821,272 in year three, and then proposed a two-year extension to the tune of $903,339 in year four and $993,739 in year five. Def.'s Mot. To Dismiss or for Summ. J. at 3-4; Brandi Aff. Ex. D. Suffice it to say that the August offer and counter-offer were the first in a protracted series of salary negotiations. Herridge Decl. ¶ 13; Compl. ¶ 13; Def.'s Mot. To Dismiss or for Summ. J. at 4-5.

When the dust had finally settled, Fox News held steady on its initial offer with a year-one salary of $495,000, while Herridge made (and Fox News rejected) counter offers with year-one salaries of $621,000; $900,000; $720,000; and $515,000,

5

respectively. *See* Brandi Aff. Exs. D, E, I, and J.  But because Herridge's 2005-2008 contract specifically contemplated extra-contractual performance after the expiration of the current contract term,[5] *see* Brandi Aff. Ex. B, ¶ 10, Fox News paid Herridge her then-current salary ($460,000) and benefits for the duration of her negotiations with Fox News, even after her 2005-2008 contract expired. *Id.*; *see also* Fox News' Reply Memorandum ("Def.'s Reply") at 6, Nov. 29, 2010 [Dkt. #8].

A number of salient events, however, occurred during the parties' negotiations. Unbeknownst to Fox News, Herridge filed an EEOC complaint on September 16, 2008. Herridge Decl. ¶ 12; Compl. ¶ 14; Def.'s Mot. To Dismiss or for Summ. J. at 4.  One day later, when Fox News rejected Herridge's counter of a five-year contract starting at $900,000, the company informed Herridge's agent that she was already "the highest-paid reporter in the D.C. Bureau."  Brandi Aff. Ex. F.  Months later, according to Herridge, the D.C. Bureau Manager gave her a written "final warning" which Herridge says was issued after she "questioned why [her] news reporting was given to a male [c]orrespondent to broadcast on the network as his own work."  Herridge Decl. ¶ 15 (detailing January 2009 "warning").  Then, in an e-mail exchange between the parties in February 2009, Fox News informed Herridge's agent that "Fox News does not employ any reporters with five-year contracts" and that it did "not intend to make an exception for [Herridge]."  Brandi Aff. Ex. I.  In March 2009, Herridge's agent retreated from five-year counter-

_____

[5]   The contract reads: "In the event that Performer continues rendering services for Fox following the expiration of the Term hereof, Performer shall continue to be paid her weekly compensation at her then-current rate."  Brandi Aff. Ex. B ¶ 10.

offers to a three-year counter-offer.  *See* Brandi Aff. Ex. J.  Fox News removed the
disputed language from Herridge's contract in May 2009.  Herridge Decl. ¶ 14.

On June 18, 2009, Fox News and Herridge entered into a new three-year contract.
Herridge Decl. ¶ 14; Compl. ¶ 14.  The disputed language was not included in the final
contract, and the salary terms were the same as those offered in Fox News' original
August 2008 proposal.  Herridge Decl. ¶ 14; Compl. ¶ 14.  In addition, Herridge's salary
increase in year one of the new contract was made retroactive and she was paid the
increase for the nine months of extra-contractual performance rendered.  *See* Herridge
Decl. ¶ 16; Compl. ¶ 15; Def.'s Mot. To Dismiss or for Summ. J. at 11.

### III.    EEOC Complaint

On March 31, 2010, the EEOC issued a Determination about the complaint
Herridge filed in September 2008.  Brandi Aff. Ex. L, at 1 (Mar. 31, 2010 EEOC
Determination).  After a lengthy investigation, it determined that there was "insufficient
evidence to establish a violation of the statutes" with respect to Herridge's allegations
that "she was demoted, denied equal wages, denied assignments, and denied promotion
based on her sex, age, or in retaliation, or that a class of individuals was discriminatorily
denied promotions."  Brandi Aff. Ex. L, at 2; Def.'s Mot. To Dismiss or for Summ. J. at
5.  However, the EEOC did conclude that its investigation "support[ed] a finding that
[Fox News] retaliated against [Herridge], in violation of Title VII, the EPA, and the
ADEA, because [Herridge] opposed discrimination."  Def.'s Mot. To Dismiss or for
Summ. J. at 5-6; Brandi Aff. Ex. L, at 1.  To support its finding that Fox News' actions
were "reasonably likely to deter employees from exercising their right to oppose

7

discrimination," the EEOC cited the proposed language[6] referencing Herridge's

discrimination allegations which was included in her draft – but not final – contract.

Brandi Aff. Ex. L, at 1.[7] The EEOC then brought this suit against Fox News.

## ANALYSIS

### I.  Standard of Review

Because the Court must rely in part on evidence outside of the pleadings[8] to

address plaintiff's retaliation claim, defendant's Motion to Dismiss will be converted to

one for summary judgment.  Fed. R. Civ. P. 12(d); *see also Martin v. Locke*, 659 F. Supp.

2d 140, 144-45 (D.D.C. 2009) (converting a motion to dismiss into one for summary

judgment).  Summary judgment is appropriate when there is "no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).[9]  A party opposing summary judgment "may not rest upon the mere allegations .

---

[6]     The EEOC also cited as evidence the CEO's "company-wide e-mail discouraging employee complaints."  Brandi Aff. Ex. L, at 1.

[7]     Although the EEOC concluded that the new, proposed language "contributed to the delay in contract negotiations, which resulted in [Herridge] working without an employment contract and being denied full wages," Brandi Aff. Ex. L, at 1, the EEOC later acknowledged that Herridge's "wage increase was made retroactive."  Def.'s Mot. To Dismiss or for Summ. J. at 5; Brandi Aff. Ex. M, at 2.

[8]     As defendant explains, Exhibits B, C, G, K, L, and M may be considered on a motion to dismiss because they are incorporated into the complaint, central to the claims presented in the complaint, or matters of which the Court may take judicial notice.  Def.'s Mot. To Dismiss or for Summ. J. at 7; *see also EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997).  Relying on Exhibits D, E, F, H, I, and J require conversion of the Motion to Dismiss into one for summary judgment.

[9]     A dispute about a material fact is genuine only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

. . of his pleading, but must set forth specific facts showing that there is a genuine issue

for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (citing Fed. R. Civ.

P. 56(e)). If and when the nonmoving party offers evidence in response to the motion,

that evidence "is to be believed, and all justifiable inferences are to be drawn in [the non-

movant's] favor." *Anderson*, 477 U.S. at 255 (internal citation omitted).

## II. The EEOC Does Not Establish a *Prima Facie* Case of Retaliation.

### A.    Elements

Under Title VII, it is "an unlawful employment practice for an employer to

discriminate against any of his employees . . . because [s]he has opposed any practice

made an unlawful employment practice by [Title VII], or because [s]he has made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding,

or hearing under[Title VII]." 42 U.S.C. § 2000e-3(a) (2006).

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show

that she (1) "engaged in statutorily protected activity; (2) that [s]he suffered a materially

adverse action by h[er] employer; and (3) that a causal link connects the two." *Gaujacq*

*v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010) (internal citation omitted). Importantly,

a plaintiff must show that "a reasonable employee would have found the challenged

action materially adverse, which in this context means it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination." *Burlington*

*Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations and

quotations omitted). Title VII, therefore, does not protect against all retaliation, but

rather "from retaliation that produces an injury or harm." *Id.* at 67. Critical to the

9

Court's evaluation of injury is the "reasonable employee" paradigm: an objective

standard which "avoids . . . a plaintiff's unusual subjective feelings." *Id.* at 68-69.

If the plaintiff makes a *prima facie* showing of retaliation,

> the burden shifts to the employer to produce a legitimate,
> nondiscriminatory reason for its actions.  If the employer does
> so, the burden-shifting framework disappears, and a court
> reviewing summary judgment looks to whether a reasonable
> jury could infer retaliation from all the evidence, which
> includes not only the [*prima facie*] case but also the evidence
> the plaintiff offers to attack the employer's proffered
> explanation for its action and other evidence of retaliation.
> *Gaujacq*, 601 F.3d at 577.

Finally, "[c]ontext matters." *Burlington*, 548 U.S. at 69.  That is, "[t]he real social

impact of workplace behavior often depends on a constellation of surrounding

circumstances, expectations, and relationships which are not fully captured by a simple

recitation of the words used or the physical acts performed." *Id.* (internal citation and

quotation omitted).

### B. Herridge Did Not Suffer Injury Sufficient to Constitute a Materially Adverse Action.

As an initial matter, defendant argues that the primary instance of retaliation

plaintiff alleges – the inclusion of language in Herridge's draft (but not final) contract do-

cumenting Herridge's discrimination complaints, was not retaliatory on its face.  Def.'s

Mot. To Dismiss or for Summ. J. at 10; *see also* Compl. ¶ 13.  Defendant contends that

the "neutral" and "completely true" language simply memorialized the circumstances

surrounding contract negotiations between Fox News and Herridge.  Def.'s Mot. To

Dismiss or for Summ. J. at 10.  Drawing all inferences in favor of the nonmoving party,

10

however, the Court credits plaintiff's allegation that the proposed language constituted an adverse action since it was placed in Herridge's proposed contract because of her previous complaints, and was "intended . . . to dissuade Herridge from making further complaints of employment discrimination." Compl. ¶ 13 (calling the language "retaliatory").

However, even assuming *arguendo* that the proposed language *did* constitute an adverse action,[10] defendant contends that plaintiff cannot prove that it was *materially* adverse such that it *caused* injury: an element necessary to make a *prima facie* case of retaliation.[11]  Plaintiff responds by alleging two types of injury: financial and emotional. Unfortunately for plaintiff, neither alleged harm is sufficient to constitute a materially adverse action.  How so?

### 1. Plaintiff Does Not Prove Financial Injury.

Plaintiff contends that because the proposed contract language was retaliatory, and

---

[10]     It is worth noting that Fox News offered Herridge the draft contract, which included the language at issue, *after* Herridge aired internal complaints, but more than one month *before* Herridge filed an EEOC complaint. *Compare* Brandi Aff. Ex. C (Aug. 6, 2008 initial proposed contract), *with* Brandi Aff. Ex. G (EEOC complaint signed Sept. 16, 2008). Moreover, Fox News was not aware that Herridge filed an EEOC complaint until well after the date of filing. Def.'s Mot. To Dismiss or for Summ. J. at 4. These facts undercut plaintiff's claim that the language was retaliatory.

[11]     There is little question that plaintiff can establish the first element: that Herridge engaged in a protected activity by complaining about age and sex discrimination. The second-prong inquiry into whether the language was a *materially* adverse action is also critical to the third prong: causal connection between the protected activity and the materially adverse action. Even if plaintiff could establish a causal connection between Herridge's complaints and Fox's actions, the connection is meaningless if the action is not materially adverse, and thus causes no injury.

because Herridge refused to sign a contract containing such language, Compl. ¶ 13, the presence of that language in the draft contract stalled negotiations and caused Herridge's financial detriment.  Plaintiff's Motion in Opposition to Fox News' Mot. To Dismiss, Or in the Alternative, For Summary Judgment ("Pl.'s Opp'n") at 10-11 [Dkt. #7].  Specifically, plaintiff alleges that Herridge was temporarily denied a salary increase; was denied interest on that salary increase; and suffered "lost opportunity cost associated with the nine[-]month delay in payment."  *Id.* at 11, 15.[12]

But because plaintiff does not show how these allegations rise to the level of material adversity, its argument is unavailing.   Indeed, even if including the language were adverse, plaintiff fails to demonstrate how proposed language included in a confidential draft contract, which is later removed from the final contract, would even be publicly known, let alone how it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  *Burlington*, 548 U.S. at 68 (internal quotation omitted).  This is especially true in light of the final contract, which provided *raises* for Herridge from the last year of her old contract to the first year of her new contract, and in each of the remaining years of the three-year contract.

More importantly, however, plaintiff utterly fails to prove financial injury. Despite complaints of "delayed" payment, plaintiff offers no evidence that Herridge was

---

[12]     Contrary to plaintiff's suggestion, *see* Pl.'s Opp'n at 15, Herridge's retroactive salary payment cannot fairly be characterized as "back pay" since she was being paid her then-current rate in accordance with the 2005-2008 contract. *See* Def.'s Reply at 8. Plaintiff offers no authority to suggest otherwise.

entitled to retroactive payment of a salary increase.[13]  And with good reason: although Herridge's 2005-2008 contract specifically contemplated payment for extra-contractual work, it explicitly set her post-contractual compensation "at her then-current rate" – a sum Fox News indisputably paid throughout the duration of Herridge's contract negotiations.  Brandi Aff. Ex. B, ¶ 10; *see also* Def.'s Reply at 6 n.2.  Neither Herridge's 2005-2008 contract, nor her 2008-2011 contract, required retroactive payment of a subsequent salary increase.  *See* Def.'s Reply at 6.  To that end, Fox News' voluntary, retroactive payment of Herridge's raise can only be characterized as a financial *benefit* to her.

Similarly, plaintiff cannot and does not establish that failure to receive interest on Herridge's retroactive salary payment – a payment not required by contract or any other authority – injured Herridge.  Whereas the 2005-2008 contract specifically contemplated continued salary payment for extra services rendered, neither the 2005-2008 contract nor the 2008-2011 contract mentioned interest payments.  Simply put, plaintiff offers no evidence that Fox News was obligated, contractually or otherwise, to pay Herridge's raise – much less interest – retroactively, and thus plaintiff does not demonstrate how Herridge is injured by the absence of interest payments.  In short, no juror could find that Herridge's alleged financial harms constitute a materially adverse action which would

---

[13]      Even if Herridge were contractually entitled to a retroactive salary increase, the alleged delay in payment is legally insufficient to establish injury.  *See Diggs v. Potter*, 700 F. Supp. 2d 20, 44 (D.D.C. 2010) ("It is well settled in this Circuit that 'absent some consequential harm or injury, a delay does not affect the terms, conditions or privileges of employment and does not constitute an adverse employment action.'") (internal citations omitted).

dissuade a reasonable employee from engaging in a protected activity.  Indeed, it is hard to imagine how a reasonable employee would be dissuaded from engaging in protected activity if that employee were still able to secure not only a multi-year employment contract, but also a multi-year raise!

### 2. Plaintiff Does Not Prove Injury Resulting From Emotional Distress.

Plaintiff also argues that Herridge suffered emotional distress during contract negotiations because of the "constant[] . . . fear of being discharged, losing her livelihood and losing her medical insurance benefits."  Compl. ¶ 15; *see also* Pl.'s Opp'n at 14-15. Emotional distress and other purely subjective injuries, however, have been consistently rejected in our Circuit as legally sufficient to constitute a materially adverse action, and thus Herridge's alleged injuries are no different here. *See, e.g.*, *Totten v. Norton*, 421 F. Supp. 2d 115, 121 (D.D.C. 2006) ("Courts in this Circuit . . . have held that purely psychic injuries such as embarrassment do not qualify as adverse actions for purposes of federal anti-discrimination statutes.") (internal citations omitted); *Johnson v. Bolden*, 699 F. Supp. 2d 295, 299-300 (D.D.C. 2010) ("Our Circuit has made clear that the harm must be 'objectively tangible' rather than 'purely subjective injuries' . . . not everything that makes an employee unhappy is an actionable adverse action.") (citations omitted).[14]

In short, after a close examination of the record, I also conclude that no juror could find that Herridge's alleged harms would constitute a materially adverse action in the

---

[14]     Moreover, by citing Herridge's personal fears with respect to her child's unique healthcare needs, plaintiff asks this Court to contravene legal standards and ignore the "reasonable employee" standard which "avoids . . . a plaintiff's unusual subjective feelings." *Burlington*, 548 U.S. at 68-69.  I disagree.

mind of a reasonable employee.

### C. Even If The Proposed Language Were Retaliatory, Fox News Prevails By Offering a Legitimate, Nondiscriminatory Reason For The Length of Contract Negotiations.

Assuming for the sake of argument that the EEOC could establish a *prima facie* case of retaliation, and thus shift the burden to Fox news to "produce a legitimate, nondiscriminatory reason for its actions," the EEOC still would not prevail. *Gaujacq*, 601 F.3d at 577 (internal citation omitted).  Plaintiff contends that the singular cause of protracted contract negotiations was the retaliatory language included in Herridge's draft contract and her consequent refusal to sign any contract containing such language. *See* Pl.'s Opp'n at 11, 15 n.5.  But that assertion is rebutted by more than ample evidence in the record.

Indeed, Herridge's own agent revealed an additional and (apparently) even weightier motive for stalling their negotiations: money!  In a September 2008 e-mail to Brandi, Herridge's agent stated: "Perhaps we should focus on the compensation, *as this piece of the negotiation holds the key to its success or failure* – in fact, agreement on an equitable number for [Herridge's] services can pave the way for a rapid resolution to the other outstanding issues."  Brandi Aff. Ex. E (emphasis added).

To that end, an objective evaluation of Herridge's salary negotiations supports Fox News' assertion that "bewildering salary demands were the primary reason for the delay in reaching a new Agreement." Def.'s Reply at 7; *see also* Def.'s Mot. To Dismiss or for Summ. J. at 14, 16.  In response to Fox News' year-one offer of $495,000, Herridge's salary demands escalated from $621,000 to $900,000 and down to $720,000 and

$515,000 before accepting Fox News' original offer of $495,000. These requests are particularly puzzling in light of record evidence demonstrating Fox News' resistance to Herridge's demands for hefty salary increases and for contracts whose terms deviated from Fox News' standard contract. *See, e.g.*, Brandi Aff. Ex. F ("Notwithstanding that [Herridge] is currently the highest-paid reporter in the D.C. bureau, you asked for a 35% increase in her salary in year 1 . . . [Fox News] was not prepared to offer [Herridge] anything close to a 35% raise in year 1."); *id.* ("Instead of lowering your proposal concerning Catherine's annual salary, you raised it to $900,000 a year, a 95% increase over her current salary."); *id.* ("If you wish to have a serious negotiation . . . I suggest that you and [Herridge] become more realistic."); Brandi Aff. Ex. I ("Fox News does not employ any reporters with five-year contracts . . . . [Herridge] is already the highest-paid reporter in the D.C. Bureau."). Even more baffling is Herridge's decision to jump from a request of $621,000 (already $126,000 higher than Fox News' initial offer), to a request of ***$900,000*** within one month of negotiations. Herridge's astronomical salary requests, coupled with Fox News' unequivocal position that such requests were unworkable, easily satisfies Fox News' burden to produce a "legitimate, nondiscriminatory reason for its actions" – here, for the delay in salary negotiations. *See Gaujacq*, 601 F.3d at 577. Herridge's allegations of retaliation, and her eagerness to blame Fox News for delays in salary negotiations, are belied by the persistent and unfeasible demands detailed in the record. Accordingly, a reasonable jury could not infer retaliation from the record and plaintiff's claims must be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's Motion for Summary Judgment [Dkt. #4]. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge